Anna Y. Park, SBN 164242
anna.park@eeoc.gov
Nakkisa Akhavan, SBN 286260
nakkisa.akhavan@eeoc.gov
Taylor Markey, SBN 319557
taylor.markey@eeoc.gov
Derek W. Li, CA SBN 150122
derek.li@eeoc.gov
Andrea E. Ringer, CA SBN 307315
Andrea.ringer@eeoc.gov
Shigufa Saleheen, SBN 341013
Shigufa.saleheen@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 785-3008
Facsimile: (213) 894-1301
E Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

vs.

IL FORNAIO (AMERICA) LLC; AND DOES 1-10, INCLUSIVE,

Defendants.

Case No.: 2:22-cv-05992-SPG-JPR

**FIRST AMENDED COMPLAINT**

TITLE VII
- Sexual Harassment
- Retaliation
- Constructive Discharge

*42 U.S.C. §§ 2000e, et seq.*

JURY TRIAL DEMAND

## NATURE OF THE ACTION

This is an action brought by Plaintiff United States Equal Employment Opportunity Commission (the "Commission") under Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to the charging party ("Charging Party") and a class of aggrieved female individuals who were adversely affected by such practices. As alleged with greater particularity in paragraphs 20 through 129 below, the Commission alleges that Il Fornaio (America) LLC ("Il Fornaio" or "Defendant") has engaged in companywide pattern or practice of unlawful employment practices by subjecting Charging Party and a class of aggrieved individuals to a hostile work environment based on sex (female) across its locations, including severe or pervasive sexual harassment; subjecting a class of aggrieved individuals to retaliation; and subjecting Charging Party and some class members to constructive discharge.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Central District of California.

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission is an agency of the United States of America charged with administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a limited liability company doing business in the State of California and the County of Los Angeles and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(1)(b), (g), and (h).

6. Defendant owns and operates fine dining Italian restaurants in California.

7. Since 2015, Defendant has owned and operated at least 19 restaurants, including 17 locations operating as "Il Fornaio," and other Il Fornaio restaurants operating as "Canaletto Ristorante Veneto" (collectively "Il Fornaio locations").

8. At all relevant times, Defendant owns and operates Canaletto Ristorante Veneto. At these Il Fornaio locations, Defendant does business as Canaletto Ristorante Veneto, which is trademarked by Defendant.

9. At all relevant times, Defendant controlled the terms and conditions of employment of employees working at the Il Fornaio locations.

10. At all relevant times, employees working at the Il Fornaio locations were paid and controlled by Defendant.

11. At all relevant times, Il Fornaio locations shared common management, including corporate headquarters, in Corte Madera, California.

12. All acts and failures to act alleged herein were duly performed and attributable to all Defendants, each acting as a single employer, successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference

shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

13. Plaintiff is ignorant of the true names and capacities of each defendant sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known. Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

## ADMINISTRATIVE PROCEDURES

14. More than thirty days prior to the institution of this lawsuit, the Charging Party filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.

15. Defendant received a copy of the charge(s) of discrimination, and participated in the Commission's investigation, including by responding to requests from the Commission for a position statement, information, and documents.

16. On January 11, 2022, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII. The Commission invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

17. The Commission engaged in conciliation communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination on terms acceptable to the Commission. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

18. On or about April 21, 2022, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

19. All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF CLAIMS**

20. Since at least 2015 to the present, Defendant has engaged in unlawful employment practices, including a pattern or practice of such unlawful employment practices, in violation of §§ 703(a)(1) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a), by subjecting Charging Party and aggrieved female employees to ongoing, unwelcome, severe and/or pervasive sexual harassment, and creating and maintaining an offensive, abusive, intimidating hostile work environment because of sex (female).

21. Defendant has engaged in a pattern or practice of unlawful employment practices by subjecting female employees companywide to a hostile work environment based on sex. Defendant's standard operating procedure is to condone and tolerate sexual harassment, taking little to no action in response to sexual harassment complaints despite the open and notorious physical and verbal harassment that permeated its restaurants, perpetuated by serial harassers, which included executives, managers, and employees.

22. Defendant's executives, managers, and employees alike targeted female employees, many of them teenagers, and sexually harassed them. Male supervisors exploited their authority over young female employees by repeatedly touching their bodies, rubbing their genitals against them, and making unwelcome sexual comments and demands for sexual favors. From the Vice President of Operations Frank Licata to restaurant managers, bartenders, barbacks, line cooks, food runners, and bussers, male employees at all levels of Defendant's corporate hierarchy participated in the creation and maintenance of the hostile work environment across Defendant's restaurants. Male harassers worked in the same restaurant and working area as the aggrieved female

employees they harassed as well as in other areas of Defendant's restaurants and Defendant's corporate headquarters.

23. The unwelcomed conduct was directed at female employees, including but not limited to hostesses, servers, bartenders, pantry cooks, food runners, bussers, and other kitchen and bar staff at Defendant's restaurants. Many were teenagers at the time of their employment with Defendant.

24. Because Defendant's standard operating procedure is to tolerate and condone sexual harassment, the problem of harassment is widespread and commonplace at Defendant's restaurants. Female employees across Defendant's locations were subjected to constant harassment throughout their employment, including comments about their bodies and requests for sexual favors. They were also subjected to physical harassment, including having their breasts, groin, and buttocks groped by Defendant's managers, supervisors, and employees throughout the relevant time period.

25. The sexual harassment experienced by the female employees was egregious and constant. Male employees physically harassed female employees and even sexually assaulted them. For instance, a male busser sexually assaulted a female employee in the women's bathroom by cornering her against a wall and groping her vagina. A male kitchen worker raped an underage female kitchen worker and was eventually criminally convicted. A male barback rubbed his penis against a female hostess and told her that he liked "salty pussy."

26. The harassment also included explicit references to sexual activities. One harasser rubbed his penis against the back of a female employee while threatening to "pop her personal bubble" and put his penis in her mouth. When a female kitchen worker bent over to do her work, a male chef commented, "That's the exact position that I would have you." A male server badgered a female prep cook to be part of a threesome with him and his wife, and another server told a female employee he would pay her for sex. A general manager also told a female employee, "Women who wear white jeans like anal sex," and said, "You have a nice body; if only I didn't have a wife, I would want to do

[various sexual acts]," and "You would like to be slapped." Another general manager told a bartender that "It looks like that you never got fucked good."

27. Graphic inappropriate pictures and videos were also part of the sexual harassment at Defendant's restaurants. For example, a chef and sous chef showed female servers and hostesses pictures of half-naked women on their cell phones. A server also recorded a video of a female food-runner, zooming in on her butt.

28. In addition, female employees were constantly subjected to sexual comments in the workplace, including: "The table is wet, wet like your pussy," "That's hot the way you grip the bottle . . . I wish I was that bottle," that the harasser would "cum on [her] face" and "eat that ass out," "It's rare for a white girl to have such a big butt," "You are so fucking sexy," and "Does your boyfriend pleasure your treasure chest?" A male kitchen worker also sent sexual messages to a 17-year-old female hostess, including, "With a face like that who wouldn't want to go to jail."

29. The conduct of these harassers, many of them serial harassers, went unchecked, was open and notorious, and was ratified by higher level management, resulting in a revolving door of female workers who left due to the intolerable working conditions. Defendant's persistent toleration of sexual harassment and its failure to correct and prevent this harassment continues to this day. As a result, hundreds of women have been affected by Defendant's unlawful practices.

30. Numerous female employees across Defendant's restaurants complained about sexual harassment, often about repeat offenders. Time and time again, Defendant's managers disregarded the complaints, leaving their female employees, many of them teenagers working their first jobs, to fend for themselves. For instance, after a teenage employee at the Palo Alto location was raped by an older male employee, Defendant's managers told the victim nothing could be done because the rape happened outside work, even though the employee had experienced harassment at work for months prior. Another female employee in Defendant's Carmel by the Sea location complained to management that male coworkers demanded to see her genitals. Management, however, disregarded

her complaint, responding, "This could be your last day." These are only two of many examples of Defendant's ongoing pattern or practice of condoning and tolerating sexual harassment across its locations.

31. Many female employees were not made aware by Defendant on how to report sexual harassment, especially when their supervisors were the ones harassing them or when the management at their locations was unresponsive or ineffectual responding to their complaints. Policies and training on the prohibition of sexual harassment and reporting procedures were often ineffective or insufficient. For example, monolingual Spanish-speaking female employees could not understand Defendant's policies and procedures provided to them only in English.

32. During the time period that Defendant had a Human Resources Department, it was centralized at Defendant's corporate headquarters. When sexual harassment complaints were made by female restaurant employees to this department, however, Human Resources failed to respond to many of them, dismissed other complaints, and failed to investigate or implement remedial measures to end the harassment reported by female employees. As a result, the harassment continued unabated across Defendant's restaurants, leading to the continued sexual harassment of female employees by the same serial harassers. Rather than take corrective action against these harassers, Defendant transferred or gave raises to some of them, even after numerous complaints from employees over the years, enabling the harassers to go forward and harass more female employees.

33. Defendant also failed to effectively train its Human Resources representatives, managers, and supervisors regarding the prohibition on sexual harassment and how to properly respond to sexual harassment reports. Despite receiving numerous complaints of sexual harassment over the years, Defendant ignored these complaints or failed to adequately respond. Instead of dealing with the widespread problem of sexual harassment known to Defendant's executive management, Defendant

instead opted to reduce the staffing of its Human Resources Department and internal operations, outsourcing most of its Human Resources functions to third parties.

34. By approximately July 2020, Defendant eliminated its Human Resources Department, in that there was no effective mechanism for restaurant employees to complain to Human Resources. Employees had nowhere to turn other than to the harassers themselves or to other higher-level managers who themselves were engaging in inappropriate conduct. If a sexual harassment complaint was made, Defendant did not correct or prevent the harassment. This emboldened harassers in various restaurants to continue their harassment, particularly after they saw that women were punished for complaining or left because of the company's ongoing failure to address the harm.

35. Defendant's corporate structure is one where executive management in its corporate headquarters in Corte Madera, California, has oversight over all its restaurants. Vice Presidents of Operations and Regional Managers frequently visit the restaurants within their respective regions, and each restaurant has a General Manager that reports to the Vice President of Operations or Regional Manager. Each restaurant also has one or more Assistant Managers, Chefs, and Sous Chefs in supervisory positions who report to the General Manager of their restaurant.

36. Defendant's executives, managers, supervisors, and Human Resources representatives knew or should have known about rampant sexual harassment across Defendant's restaurants given the numerous complaints made by female employees, the open and notorious nature of the sexual harassment, and management's routine participation in it. Despite this, Defendant failed to take adequate remedial measures to promptly correct and prevent the harassment.

37. For example, Vice President of Operations Frank Licata routinely visited Defendant's restaurants in Southern California. Despite the open and notorious harassment occurring across these restaurants and female employees complaining to Vice President Licata personally about sexual harassment, he failed to adequately respond to the problem. Quite the opposite, Vice President Licata participated in the sexual

harassment of female employees. Likewise, since at least 2015 through to the present, other high-level managers, including General Managers, across Defendant's locations engaged in sexually harassing conduct and/or failed to correct and prevent sexual harassment.

38. The result of Defendant's standard operating procedure of condoning and tolerating sexual harassment, including its failure to take adequate remedial measures and its outsourcing of its Human Resources functions, was the widespread and continued sexual harassment of female employees throughout Defendant's locations during the relevant time period. Defendant has also engaged in other unlawful employment practices by subjecting female employees to retaliation after complaining about sexual harassment, including retaliatory harassment, intimidation, reduction of their hours, and termination. Despite complaints by female employees, Defendant's standard operating procedure is to allow the sexual harassment to continue unchecked, leaving these employees with an impossible choice between working in an environment permeated with sexual harassment and resigning their positions. Based on their intolerable work conditions, many female employees were compelled to choose the latter, resigning their employment due to the continuous, severe, and pervasive sexual harassment.

39. Examples of Defendant's pattern or practice of unlawful discrimination across its locations are provided below.

**A. Pasadena**

40. Female employees, including underage girls, at Defendant's Pasadena location were subjected to sexual harassment by its male staff, including managers, kitchen workers, servers, and bar staff. The harassment was frequent and constant throughout the female employees' employment. The sexual harassment included lewd sexual remarks, sexual advances, and unwanted physical touching. Despite receiving multiple reports of sexual harassment by management and non-management staff, Defendant failed to address the rampant sexual harassment problem, which only led to more female employees, including the Charging Party, to be sexually harassed.

41. At the Pasadena location, managers in a position of authority created an environment of tolerating and condoning sexual harassment, including their own sexual harassment of female employees. At least as far back as 2015, General Manager Chamal Perrera subjected the female employees to widespread and continuous sexual harassment. For example, he gifted a female server unwanted lingerie at the restaurant, which she immediately showed to Assistant Manager Herrera, complaining that it was an unwanted sexual advance. Nevertheless, General Manager Perrera continued to make daily inappropriate comments to this female server and other female employees for years, including telling them, "Women who wear white jeans like anal sex," telling a teenage employee, "Could you dance for us in the back [of the restaurant]," telling a teenage employee to "turn around so we can look at your body," and telling another employee, "You have a nice body; if only I didn't have a wife, I would want to do [various sexual acts]." He also showed female servers and hostesses pornography on his cell phone multiple times, including nude photos of women. Also, General Manager Perrera failed to take complaints made by female employees seriously in his role as a manager, tolerating class members being sexually harassed by customers. He dismissed a complaint from a female employee of customer harassment by saying that "as long as they're spending money, they can do what they want to you."

42. Defendant knew about General Manager Perrera's misconduct but did not respond quickly to end the sexual harassment. Even though Vice President of Operations Frank Licata received multiple reports about General Manager Perrera showing pornography to female employees, General Manager Perrera did not separate from his employment with Defendant until 2018.

43. After General Manager Perrera left, Daiano Morassi became the new General Manager of the Pasadena location and continued the practice of sexually harassing female employees. For example, General Manager Morassi made demeaning and sexually charged comments to female employees, including making sexually explicit comments to a female server/bartender that "the table is wet, wet like your pussy" and

"That's hot the way you grip the bottle . . . I wish I was that bottle." He also told the same employee she was hot and had the nicest lips. Additionally, he frequently rubbed a female bartender's back and tickled her elbow, made sexually graphic comments to her about not having had good sex, expressed his desire to be with her if he were not married, and told her, "It looks like that you never got fucked good," and "You need to be slapped in the face and you'd probably like that."

44. As early as 2018, a female employee reported General Manager Morassi's sexual harassment to Manager Angela Herrera. She, however, did nothing to address the complaint and General Manager Morassi continued to harass employees. Several more female employees complained to Manager Herrera over the years about General Manager Morassi but each time, no action was taken, and his harassment continued or intensified, leading at least one employee to quit. On one occasion, when a female employee complained to Manager Herrera, she told this employee that she herself had been sexually harassed by a sous chef who slapped her butt and her complaint to corporate went nowhere.

45. In this environment, where the general managers were serial harassers, other male employees in managerial or supervisorial positions were emboldened to sexually harass female employees. For example, Chef Luis Escobar made sexual comments about a teenage female hostess's body and grabbed her butt. Additionally, he told a female server/bartender she would look good in a bikini and frequently commented on her butt. He also asked a hostess twenty years his junior how she likes to have sex with girls and whether she was into older men.

46. When female employees reported Chef Escobar's sexual harassment to management, Defendant failed to hold him accountable. For example, a female server/bartender reported Chef Escobar's sexual harassment in 2018 or 2019 to General Manager Morassi and Manager Herrera. When Chef Escobar's sexual harassment continued, the server/bartender reported his sexual harassment to Human Resources but received no response. Instead, Chef Escobar's sexual harassment of this employee

became more intense after her report. Once again, she reported Chef Escobar's sexual harassment to Human Resources, but Human Resources questioned her credibility since she did not have any witnesses. Instead of taking disciplinary action, Defendant transferred Chef Escobar to its Manhattan Beach location and gave him a raise while he continued to sexually harass female employees.

47. Besides Chef Escobar, other male employees were also emboldened to engage in rampant sexual harassment at the Pasadena location. For example, busser Jose spread rumors that he had slept with a female hostess, when in fact he had not. When a female bartender reported to Manager Angelica that male employees were grabbing her behind, Manager Angelica brushed off the complaint and told the female employee that she was being dramatic.

48. Another serial harasser was Server Tony Riusech, who regularly sexually harassed numerous female employees. For example, he told a female server, "It's rare for a white girl to have such a big butt," and asked her about her sex life. On a regular basis from 2016 through 2018, Server Riusech grabbed a female hostess's butt, caressed her back, made comments about her breasts, rubbed his penis against her, and talked to her about having sex with his girlfriend. The hostess objected to his advances and complained repeatedly to General Manager Morassi and Manager Herrera. Manager Herrera brushed off the hostess's complaints and simply told Server Riusech to stay away from the hostess. While General Manager Morassi expressed frustration because numerous employees had complained about Server Riusech, he did not take any immediate action to stop the sexual harassment and the harassment continued.

49. By the time Charging Party began her employment at the Pasadena location, Defendant had received many complaints from multiple women against multiple harassers, including General Manager Morassi and Server Riusech. Defendant, however, had failed to take corrective action to stop the harassment. This led to Charging Party being continually sexually harassed during her employment with Defendant, ultimately leading to her constructive discharge in May 2019.

50. Charging Party worked at Defendant's Pasadena location as a hostess/line cook from 2017 to May 2019. During Charging Party's employment, Server Tony Riusech, who was at least twenty years older than Charging Party, regularly spoke to her about women's bodies and graphic details of his sex life. He rubbed his penis against Charging Party's back while breathing heavily and threatening that he would "pop her personal bubble" and put his dick in her month. Line cooks Trejo, Gonzalez, and Saldviar also spoke brazenly to Charging Party on multiple occasions about sexual activities such as their prowess in bed and their sex lives. They asked the Charging Party questions about how she liked to have sex, and they told her about their sexual desires regarding female restaurant patrons.

51. In response, Charging Party reported the cooks' sexual harassment multiple times to management, including Sous Chef Hugo Contreras and General Manager Daiano Morassi. Rather than taking prompt remedial action, Sous Chef Hugo Contreras responded, "Boys will be boys" and told Charging Party to ignore them. Despite Charging Party's reports of sexual harassment to management, she continued to experience unwelcome sexual harassment because management did not take effective corrective action. Indeed, the sexual harassment escalated after Charging Party made her reports. The continuing sexual harassment made Charging Party realize that Defendant's management would not protect her from those who were sexually harassing her. The ubiquitous, frequent, and ongoing sexual harassment and management's failure to take effective corrective action made the working conditions intolerable for Charging Party. Under these circumstances, Charging Party was forced to resign from her job with Defendant in May 2019.

52. On October 7, 2019, Charging Party filed a charge of discrimination alleging claims of sexual harassment and constructive discharge for her and a class of aggrieved female employees.

**B. Manhattan Beach**

53. Female employees at Defendant's Manhattan Beach location were subjected to unwelcome, severe, and/or pervasive sexual harassment by male staff, including chefs and servers. This harassment was frequent and constant throughout the female employees' employment. Defendant's failure to address open incidents of sexual harassment or properly handle complaints of harassment from female employees led to the continued sexual harassment of female employees by the same serial harassers.

54. For example, from at least 2015 to 2018, Chef Vincente Mendoza frequently sexually harassed female employees, including making unwelcome sexual comments to female employees and inappropriately rubbing against them. For example, he hugged a female server, pointed down to his penis, and said, "Look what you did," implying that she gave him erection. On another occasion, Chef Mendoza pushed into the female server from behind and said, "Don't worry, it's my phone you're feeling." On another occasion, Chef Mendoza approached a female employee and said, "Let me show you what a real Mexican is like," and kissed her cheek.

55. Other male employees also sexually harassed female employees. For example, in 2021, a male busser blocked a female pantry cook from exiting the building after her night shift, asked where she lived, and suggested they go on a date. Server Victor Salas Munoz also harassed young female employees, including a female hostess in 2019. Server Munoz, a man nearly 15 years older than the female hostess, made daily comments about the hostess's "sexy" body, hugged her without her consent, and squeezed her hips throughout her employment. When the hostess resisted, Server Munoz told her he could not keep his hands to himself.

56. Management at the Manhattan Beach location knew or should have known of the sexual harassment but either ignored it or failed to take prompt and effective action. Female employees reported Chef Mendoza's sexual harassment to Manager Sarah Valle and General Manager Fernanda Cassini, who later involved Defendant's Corporate Human Resource representative Jess McSwain. Management at Manhattan Beach never

communicated the outcome of the investigation to the female employees who raised complaints.

57. Management at the Manhattan Beach location also refused to take reports of sexual harassment. When the female pantry cook went to management to resign due to the busser's sexual harassment, she said she also wanted to make a written report of sexual harassment. However, management only provided her with a document stating she was leaving her position voluntarily and she was not able to file a written complaint.

58. Due to Defendant's failure to adequately address or prevent further harassment, male management and staff were encouraged to continue their sexually harassing behavior. As a result, female employees of Defendant's Manhattan Beach location were subjected to intolerable working conditions, which compelled some to quit. For example, the female pantry cook was forced to quit due to the severe sexual harassment suffered by her, which placed her safety in danger, and because management refused to allow her to complain.

**C. Del Mar**

59. Young female servers, food-runners, and hostesses at Defendant's Del Mar location were subjected to unwelcome, severe, and/or pervasive sexual harassment by male staff, including managers and servers. This harassment was frequent and constant throughout the female employees' employment. Not only did management fail to respond to repeated complaints of sexual harassment or intervene when harassment occurred in front of them, but male managers and executives themselves actively participated in and encouraged harassing behavior. Defendant's failure to take corrective action resulted in the ongoing sexual harassment of multiple young female employees by the same serial harassers.

60. The culture of sexual harassment permeated down from high levels of Il Fornaio management to the Del Mar location. For example, when visiting the Del Mar location, Vice President of Operations Frank Licata profusely complimented the looks of a 19-year-old female food-runner and emboldened others to harass her as well. On

multiple occasions between 2022 and 2023, friends of Licata touched the 19-year old's hair and asked her, "Where's my hug?" On one occasion in 2023, Vice President Licata touched the 19-year-old's back and ran his hand down her back by rubbing in a zig zag pattern, only stopping at her lower back.

61. General Manager Vittorio Homberger targeted and sexually harassed multiple young female hostesses and servers by repeatedly making sexual comments and touching their bodies without consent. In 2019, Homberger repeatedly leered at a female server, unnecessarily touched her back and shoulders, and made jokes about his sexual exploits in front of her before inserting her into the sexual act of the joke. In the case of another female hostess in 2020, Homberger touched her arms or her back in a sexual manner and make sexual comments about her appearance nearly every shift. When the hostess opposed the sexual harassment and swatted Homberger's hand away from her body, she was immediately retaliated against and fired the following shift.

62. Assistant Manager Kyle Rementer engaged in a similar pattern of targeting young girls, repeatedly making inappropriate sexual comments about their bodies and their looks. For example, in approximately 2021 or 2022, Rementer told a 17-year-old female server that she had to "stop coming to work looking so hot." He also told another female server she looked "sexy." In addition, he frequently caressed a female hostess's shoulders, placed his arm around her without her consent, and whistled in her ear. Rementer also targeted another 18-year-old hostess by taking away her belongings and telling her she was "a pretty girl, [so] she thinks she can get away with stuff."

63. Server Slobodan Plavsic also engaged in frequent sexually harassing behavior, targeting young female staff at the Del Mar location. In 2023, Server Plavsic, a nearly 40-year-old man, repeatedly harassed a 19-year-old female food-runner to go out with him. On one occasion, he approached the female food-runner from behind and kissed her head, making her deeply uncomfortable. He even recorded a video of the female food-runner, zooming in on her butt, and then showed the video to her at work. In

2022, he frequently solicited a 20-year-old server to go out drinking with him, despite her informing him she was under the drinking age.

64. When the female employees complained to management and Human Resources, Defendant failed to take prompt and effective action and the harassment continued. For example, a female hostess reported Assistant Manager Rementer's sexual harassment to General Manager Monique Correa and Assistant Manager Angela Herrera at least three times in 2022, but no corrective action was taken, and the harassment continued. When another hostess complained about Assistant Manager Rementer's sexual harassment to Managers Correa and Herrera, she was told "it's a process" and to "stick it out," and no remedial action was taken in response.

65. The female food-runner also reported Server Plavsic's behavior to Assistant Manager Angela Herrera multiple times, once after he kissed her head and again after seeing his video zooming in on her butt. Each time, no disciplinary action was taken, and the harassment continued. The food-runner was left to work the same shifts with Plavsic, who felt emboldened to continue to harass her after seeing no consequences.

66. Defendant also retaliated against young female employees who complained or objected to the harassment. Shortly after the female hostess complained regarding Assistant Manager Rementer's sexual harassment and requested to no longer work with him, her hours were cut. Another hostess's hours were also cut after she complained about Assistant Manager Rementer's harassment. And after another hostess rejected General Manager Homberger's advances, she was quickly terminated from her role. Many employees at the Del Mar location were not aware of any alternative mechanisms to complain because of Defendant's inadequate sexual harassment training.

67. Due to the repeated sexual harassment from multiple harassers and Defendant's failure to adequately address or prevent further harassment, male workers at the Del Mar location were encouraged to continue to harass female employees constantly and openly, creating intolerable working conditions for many female employees. For example, after being subjected to continuous physical harassment from Assistant

Manager Rementer, being told to "stick it out" after complaining to management, and then having her hours cut, a female hostess was compelled to quit her position in 2022.

**D. Burlingame**

68. Female employees, including hostesses and servers, at Defendant's Burlingame location were subjected to unwelcome, severe, and/or pervasive sexual harassment by male employees, including bartenders, bar staff, bussers, and servers. This harassment was frequent and constant throughout the female employees' employment. Despite repeated reports of sexual harassment to management, Defendant's failure to take effective corrective action led to continued sexual harassment of female employees, including teenage employees, by the same serial harassers.

69. The bar and kitchen staff in Burlingame regularly sexually harassed female employees, both verbally and physically. For example, Bartender Alex Jimenez caressed a female hostess's face, told her that she was beautiful, and rubbed her back more than a half-dozen times. Jiminez also repeatedly leered at a female server, looking up and down her body and saying, "Damn, baby." He and Barback Sammy Campana also made sexually offensive comments to female employees, including saying that he would "cum on [her] face" and "eat that ass out" and commenting that the female employee had a "big butt." Barback Sammy Campana also engaged other egregious sexual conduct, including grabbing a female hostess from behind, rubbing his penis against her, and saying he liked "salty pussy."

70. Other employees also participated in the harassment, including Server Raymundo Munoz and other male bussers who repeatedly grabbed and rubbed female hostesses' buttocks, backs, and waists. Server James Butterworth repeatedly leered at and commented about the size of a female hostess's breasts, continually harassed her to go out with him, and stalked her.

71. When female employees complained to management and human resources, Defendant's failure to take prompt and effective action against sexual harassment resulted in continued sexual harassment. For example, in 2019, a female hostess reported

sexual harassment by Bartender Jimenez and Barback Campana to General Manager Chelsea Alton, and another female hostess reported sexual harassment by Bartender Jimenez to General Managers Alton and Emilio Silvestri. Despite these reports, Bartender Jimenez continued to sexually harass other female employees, including another female server in 2022. This server reported sexual harassment by Bartender Jimenez to General Manager Alton, who acknowledged that the female server was not the first person to complain about Jimenez. When nothing happened, the female server reported the issue to Human Resources, but the sexual harassment continued unabated. Similarly, despite the 2019 complaint about Barback Campana's sexual harassment, he continued to harass other female employees, including a female hostess, who reported his harassment in 2022. Despite multiple complaints of sexual harassment against them, Defendant still employed Bartender Alex Jimenez and Barback Sammy Campana as of 2023.

72. Defendant's management also retaliated against female employees who reported sexual harassment. For example, when a female hostess complained in 2022 regarding sexual harassment by Bartender Jimenez, General Manager Alton responded by reneging on her promise to assign this female hostess more shifts.

73. In permitting the sexual harassment to continue and failing to adequately prevent further harassment, Defendant subjected its female employees at the Burlingame location to intolerable working conditions, which compelled female employees to quit. One female hostess was forced to quit in 2020 and a second female hostess was forced to quit in 2023 when Bartender Jimenez continued to harass them after they reported his ongoing harassment and General Manager Alton failed to take action to stop the harassment.

**E. Irvine**

74. Female employees, including hostesses and bartenders, at Defendant's Irvine location were subjected to unwelcome, severe, and/or pervasive sexual harassment by its male staff, including managers, barbacks, and bussers. This harassment was frequent and

constant throughout the female employees' employment. Despite repeated reports of sexual harassment to management, Defendant's failure to take effective corrective action led to the continued sexual harassment of multiple female employees by the same serial harassers.

75. The toleration and condonation of sexual harassment that permeated down from higher level executives to local managers, servers, and staff is evident at the Irvine location. Those in managerial positions frequently engaged in sexual harassment or were present for harassing conduct and did not intervene, which signaled that such behavior would be condoned by Defendant. For example, in 2021, in front of other employees, Vice President Licata grabbed a female bartender and lifted her off the ground, kissing her and leaving saliva on her face. At the same time, he made sexual comments about the bartender's looks, body, and clothing. He also often looked up and down at this same bartender, called her a "pretty face," talked about her "pretty hands," and commented on her weight loss. His behavior occurred openly in front of Il Fornaio employees and management without any intervention, emboldening other male staff to engage in sexual harassment.

76. Other managers at Irvine also participated in the harassment. For example, openly in front of employees and managers, Manager Tanya Headrick grabbed a female hostess's butt unprovoked in 2021. The other managers and the employee who watched the incident occur in front of them did nothing. Similarly, in 2021, Manager Rafael Mendoza witnessed male barbacks poke at a female bartender's breasts and comment on their large size. The barbacks then encouraged Manager Mendoza to look at bartender's breasts, which he did, rather than stopping the behavior or intervening.

77. Busser Constancio was a repeat offender at the Irvine location, harassing multiple female employees throughout their employment with Defendant. Constancio made frequent verbal sexual comments to female employees, such as pushing food into female employees' mouths and making sexually suggestive comments. In 2022, Busser

Constancio sexually assaulted a female hostess by following her into the women's bathroom, cornering her against a wall, and groping her vagina.

78. Management at the Irvine location knew or should have known about the rampant sexual harassment at the restaurant but failed to take prompt and effective corrective action to stop it. For instance, after a female bartender reported to Manager Headrick and General Manager Marcello Apollonio that she was being sexually harassed by multiple male employees, no corrective action was taken, and the harassment continued. Indeed, many managers at the Irvine location participated in the sexual harassment of female employees.

79. Defendant's management also retaliated against female employees at the Irvine location who complained about sexual harassment. After the female bartender complained to General Manager Apollonio that she was being sexually harassed by multiple male employees in 2022, General Manager Apollonio retaliated against her by giving her the most burdensome tasks, such as cleaning the floor in front of the bar and under tables, cleaning the windows and grout, and rolling napkins with cutlery. All these tasks were outside of her normal responsibilities as a bartender and were assigned to punish her for making a complaint about sexual harassment.

80. Due to the ongoing, continuous, and severe sexual harassment and Defendant's failure to adequately prevent further harassment, female employees at Defendant's Irvine location were subjected to intolerable working conditions, which compelled female employees to quit. For example, after being sexually assaulted by Busser Constancio at work, a female hostess no longer felt safe working for Defendant and was compelled to quit in 2022.

**F. Coronado**

81. Female employees at Defendant's Coronado location were subjected to unwelcome, severe, and/or pervasive sexual harassment by its male staff, including managers and kitchen staff. This harassment was frequent and constant throughout the female employees' employment. Despite repeated reports of sexual harassment to

management, Defendant failed to take effective corrective action, leading to the continued sexual harassment of female employees by the same serial harassers.

82. Male managers and staff at the Coronado location harassed female employees verbally and physically, both of which were unwelcomed. For example, in 2022, Restaurant Manager Jose Olsacoaga made repeated unwanted sexual advances towards female employees and frequently called a female busser “mi amor.” At one point, Manager Olsacoaga interrupted the female busser while she was cleaning, picked up a damp towel, dragged the towel over her body as if to “clean” her, and then touched her breasts and laughed in her face. Also in 2022, Line Cook Jesus Salas repeatedly leered at a female busser, demanded she go out with him, and subsequently followed her into a walk-in refrigerator, blocked the exit, and forcibly attempted to kiss her.

83. Management at Defendant’s Coronado location knew or should have known of the sexual harassment but failed to take prompt and effective action. For example, a female busser complained in writing to General Manager Luca Allieri regarding sexual harassment by Line Cook Salas and Manager Olsacoaga. No corrective action was taken after the complaint, however, and the harassment continued. Line Cook Salas continued to work at the Coronado location, appeared angry at the female busser, and discussed the incident with other coworkers, who then contributed to the hostile workplace environment by telling the female busser that she was exaggerating by complaining about harassment.

84. Ultimately, due to the continuous sexual harassment, Defendant’s failure to prevent further harassment, and the increasingly hostile work environment that had developed following her complaint, the female busser felt compelled to resign in 2022.

**G. Newport Beach**

85. Female employees at Defendant’s Newport Beach location were subjected to unwelcome, severe, and/or pervasive sexual harassment by male employees, including a chef and other kitchen staff, who made sexual advances, propositioned female employees

for sex, commented on sexual activities, and touched their breasts and butts. This harassment was frequent and constant throughout the female employees' employment.

86. For example, Chef Moises Mendoza Islas and Sous Chef Raul Hernandez frequently leered at a teenage hostess, commented how beautiful she was, and told her they wanted her to wear tight clothes. On one occasion, Sous Chef Hernandez slapped the hostess on the butt in front of the kitchen staff. The teenage hostess, like many other employees, was not aware how to report the harassment because she had not been trained on how to do so by Defendant. Nevertheless, because the harassment occurred out in the open and in front of other employees, management knew or should have known that it was occurring.

87. Chef Mendoza Islas and Grill Cook Raul Castillo Hernandez also sexually harassed a female kitchen worker throughout her employment, which ended in 2020. Grill Cook Hernandez repeatedly placed his hands on this employee's buttocks, hands, and sometimes on her breasts. Even though she slapped his hands away, he continued to place them on her butt. Chef Mendoza Islas often told the kitchen staff worker how large her breasts were and how plump they looked. When she bent down to do her work, he said, "That's the exact position that I would have you." He also told the kitchen worker, "You know what to do to get more hours . . . but since you are not interested, I cannot help you." He frequently reminded the worker through late-night calls and messages that he was her supervisor and decided how many hours and when she would work. The harassment was so bad that the kitchen worker called Human Resources during working hours at least twice from 2017 to 2019 but was sent to voicemail without a chance to talk to an actual person. Because of Defendant's ineffective reporting system, the sexual harassment continued. Eventually Chef Mendoza Islas retaliated against the kitchen worker for opposing the harassment by reducing her hours and then not assigning her any more hours, which effectively terminated her employment.

88. Chef Mendoza Islas and Sous Chef Hernandez also frequently hugged a female hostess, who was a teenager for most of her employment with Defendant, and

pressed against her so that her breasts and waist would be against their bodies. They also leered at her, commented how beautiful she was, and said they wanted her to wear more close-fitting clothes. Sous Chef Hernandez slapped her on the butt in front of the kitchen staff. The hostess did not report the unwelcomed conduct because she was eighteen at the time and Defendant had not ensured that she and other employees knew how to report sexual harassment committed by management. Nevertheless, the harassment was open and notorious and should have been noticed by other managers.

89. Harassment by management at the Newport Beach location encouraged other male employees to engage in the unwelcomed sexual harassment. For example, Bartender Craig/Greg propositioned a female employee to go to Palm Springs with him because his wife did not want to have sex with him, repeatedly leered at her, and made sexual comments about her looks.

**H. Palo Alto**

90. Female employees, including teenage employees, at Defendant's Palo Alto location were subjected to unwelcome, severe, and/or pervasive sexual harassment by its male staff, including kitchen workers, a chef, a cook, and servers. This harassment was frequent and constant throughout the female employees' employment. Management at Defendant's Palo Alto location failed to protect its female employees, especially its teenage staff, from sexual harassment, including lewd sexual remarks, unwanted physical touching, and even rape.

91. For example, an underage female kitchen worker was harassed by multiple male employees during her employment at the Palo Alto location. Chef Luis Pacheco sexually harassed this teenage employee by repeatedly asking her to go out with him and cursing at her when she refused his advances. Kitchen Worker Angel Roman Moreno repeatedly made sexual advances and fondled the breasts and back of a female kitchen worker when they were working together in the kitchen. Kitchen Worker Moreno escalated his sexual harassment and raped the young female employee in 2019. The employee reported the rape to police, and Kitchen Worker Moreno was arrested at the

Palo Alto location while he was working with other employees. Kitchen Worker Moreno was ultimately convicted of a sex crime.

92. Shortly after Kitchen Worker Moreno's arrest, the female kitchen worker complained to General Manager Stephanie Marcus and Assistant General Manager Renira Keating. They informed the female kitchen worker that Defendant could not do anything about the situation because the rape occurred outside of work, although Moreno had sexually harassed her at work for months prior to the rape. Defendant took no disciplinary action and Kitchen Worker Moreno continued to harass and intimidate the female Kitchen Worker, even laughing at her. The female kitchen worker was also sexually harassed by Kitchen Worker Francisco Zuniga and other staff. When the female kitchen worker reported to General Manager Marcus and Assistant General Manager Keating that Kitchen Worker Zuniga and other staff were groping her breasts and buttocks, the managers warned her not to report the incidents to the police. Because of the severe and continuous sexual harassment that she faced and Defendant's refusal to take any action to prevent or correct the sexual harassment, the female kitchen worker had no choice but to quit her job in 2021.

93. Unfortunately, other female employees working at the Palo Alto location were also sexually harassed. For example, Server Pablo Moreno Cortez frequently commented to an underage female hostess that she had a beautiful body and was "hot." Kitchen Worker Oscar Cota-Sotelo repeatedly told the same female employee that he could not concentrate because her skirt was too short. In 2019, Server Miguel groped the back of another female hostess, tried to force her to kiss him, and showed her pictures of his genitals. Additionally, a Sous Chef grabbed a female kitchen worker's butt several times and repeatedly asked her to hook up with him despite her rejection of his advances.

94. Despite having knowledge of an ongoing problem with sexual harassment at the restaurant, management at Palo Alto failed to take appropriate corrective action. For example, a female hostess reported in 2021 to Assistant General Manager Renira Keating that Kitchen Worker Cota-Sotelo was harassing her. While Assistant General Manager

Keating promised to fire him, but that did not happen. When this female kitchen worker was also sexually harassed by Server Cortez, she realized that management would not protect her from sexual harassment from Kitchen Worker Cota-Sotelo and Server Cortez. Because of the continuous sexual harassment that she experienced and Defendant's failure to address the problem, the female hostess was compelled to quit in 2022.

**I. Walnut Creek**

95. Female employees, including teenage hostesses and servers, at Defendant's Walnut Creek location were subjected to unwelcome, severe, and/or pervasive sexual harassment by its male employees. This harassment was frequent and constant throughout the female employees' employment. Defendant's standard operating procedure of condoning and tolerating sexual harassment is illustrated by the fact that multiple managers at the Walnut Creek location sexually harassed female employees. It is also underscored by management and Human Resources' failure to respond adequately to reports of sexual harassment.

96. For example, General Manager Walter Lezama regularly rubbed the backs of underaged female employees and gave them unwanted massages. He also kissed the cheek of a female employee, groped the thigh of an underaged female employee, and played with the hair of another female employee. He repeatedly asked underaged employees for drinks to get them drunk, which they refused. Despite having sexually harassed multiple female employees, he was still employed by Defendant as of 2023.

97. The sexually hostile environment perpetuated by General Manager Lezama emboldened other sexual harassers at the restaurant to harass female employees. When female employees reported being sexually harassed, management failed to take appropriate corrective action.

98. For example, when a female server reported to General Manager Lezama in 2023 that Server Enzo Pagliuca was spreading false rumors about her being an escort and prostitute, Lezama acted annoyed and took no correction action. The female server then reported Server Pagliuca's conduct to Restaurant Manager Mohamed Lounas and

Assistant Manager Sanela Bilalovic. This caused General Manager Lezama to become very upset, even though Server Enzo eventually admitted to the harassing conduct. General Manager Lezama just told Server Enzo to apologize and did not impose any disciplinary action. General Manager Lezama instead warned the female server not to inform Human Resources about the incident and continued to have the server work with Server Enzo, which made her extremely uncomfortable. Additionally, General Manager Lezama retaliated against the female server by being increasingly hostile toward her and by denying her work. After being sexually harassed and retaliated against for simply reporting sexual harassment, the female server was compelled to resign in 2023.

99. Defendant's corporate office also failed to address sexual harassment at the Walnut Creek location. In 2022, a female server made multiple reports to General Manager Walter Lezama, Manager Mohamed Lounas, and Assistant Manager Sanela Bilalovic that Servers Scott Grana and Eduardo Lopez were sexually harassing her, including making frequent lewd sexual comments. After the managers refused to take any corrective action, the female server reported the sexual harassment to corporate. , Corporate evidently contacted the managers at the Walnut Creek location but did not ensure that they dealt with the sexual harassment problem. Instead, the managers at the Walnut Creek location retaliated against her for contacting corporate by giving her less tables to serve, which reduced her tips. Due to the continuous sexual harassment, Defendant's failure to prevent further harassment, and the retaliation she suffered, the female server was compelled to quit in 2022.

**J. Woodland Hills**

100. Female employees, including teenage hostesses and servers, at Defendant's Woodland Hills location were subjected to unwelcome, severe, and/or pervasive sexual harassment by its male employees. This harassment was frequent and constant throughout the female employees' employment. Supervisors at Woodland Hills engaged in harassing behavior, which emboldened other employees such as bussers and servers to sexually

harass female employees. Management at Woodland Hills also failed to take adequate corrective action in response to notice of sexual harassment at the restaurant.

101. Supervisors at Woodland Hills frequently engaged in sexual harassment of female employees. For example, Chef Giuseppe Dimola and Sous Chef Nacho showed female servers and hostesses pictures of half-naked women on their cell phones. In addition, Chef Giuseppe Dimola placed his hand across a female hostess's nipple.

102. The sexual harassment by supervisors emboldened male employees to sexually harass their female colleagues. For example, Server Leo Diaz physically and verbally harassed several female employees over a period of at least four years. For instance, he came behind a female hostess and rubbed his genitals against her butt, told another female employee that she "smelled sexy," and harassed an underage female hostess by repeatedly asking her out to drink with him even though she was underage. When the teenage hostess rejected Server Diaz's advances and reminded him that she was a minor, he responded by repeatedly calling her a "bitch." Management dismissed female employees' complaints about Server Diaz's unwelcome conduct by saying, "Oh that's Leo, he's crazy," and the sexual harassment continued.

103. Server Chris Salvatierra also frequently sexually harassed female employees at the Woodland Hills location. He gawked at female employees, commented about the size of their butts, and asked them about their single status and boyfriends. He also made sexual advances towards a female employee by telling her, "You are so fucking sexy," "Meet me at my car," "Your ass is fatter," and "I know you want me." General Manager Martin Lencina did not take reports of Server Salvatierra's sexual harassment seriously, and despite being a serial harasser, Server Salvatierra was promoted by Defendant to a supervisory position.

**K. Carmel by the Sea**

104. Female employees, including servers and teenage hostesses at Defendant's Carmel by the Sea location were subjected to unwelcome, severe, and/or pervasive sexual harassment from its male employees. The harassment was frequent and constant

throughout the female employee's employment, largely due to Defendant's practice of ignoring complaints of sexual harassment.

105. For example, in 2022, Manager Chris Palma repeatedly made unwelcomed sexual advances toward a female server by inviting her to have a "good time" with him and groping her butt. Also in 2022, Kitchen Worker Leonardo Daniel Hernandez Dominguez sent sexual messages to a 17-year-old female hostess, including saying, "I think you're cute," and "With a face like that who wouldn't want to go to jail." In front of this same 17-year-old female hostess, Server Jason Funderburg talked about his sex life and asked her about having a threesome with him and his wife. In 2018, two male servers, both named Carlos, asked another hostess in Spanish if they could "see her vagina."

106. Management at the Carmel by the Sea location knew or should have known of the sexual harassment but failed to take prompt and effective corrective action. Sometime between 2022 and 2023, a female employee reported Server Funderburg's sexual harassment to Manager Don McNerney. Manager McNerney, however, failed to take any action and dismissed the complaint. Similarly, after a female hostess told management in 2018 that she was being sexually harassed by male servers and that the harassment made her to want to quit working at Il Fornaio, management dismissed her complaint, instead telling her, "This could be your last day." The continuous sexual harassment, coupled with management's total disregard of her sexual harassment complaint and suggestion that she should quit, compelled the female hostess to resign from her position that day.

**L. Corte Madera**

107. Female employees at Defendant's Corte Madera location were subjected to unwelcome, severe, and/or pervasive sexual harassment by male employees. This harassment was frequent and constant throughout the female employees' employment due to Defendant's standard operating procedure of condoning and tolerating sexual harassment.

108. For example, two male servers frequently untied the apron of a female server, grabbed her waist, and pinched her sides when she walked by them. Male Server Javier Vicuna Guante asked this same female employee to have sex with him and said he would even pay her to have sex. All these incidents occurred openly in front of managers without any intervention. Additionally, Manager Thomas Lutavakula physically hit a female server on her shoulder after she told him not to touch her and told her to shut up.

109. Management at the Corte Madera location knew or should have known of the sexual harassment but failed to take prompt and effective corrective action. When a female employee reported to Manager Roberto Herman that she was being sexually harassed by a male bartender, Manager Herman told the employee no action could be taken because no other female employees had stepped forward. Also, after she was physically hit by Manager Lutavakula, a female server reported this incident to Human Resources three times before receiving any response. Shortly after she made her complaint to the corporate office, a manager told staff they were forbidden from doing so going forward. The server received no response to her first two complaints, and when she reported the incident for a third time, she only received a letter from Human Resources indicating an investigation was underway. To the server's knowledge, however, nothing was done to investigate her complaint, and she was never contacted further regarding her complaint, the investigation, or the outcome of the investigation.

110. Another female server went on medical leave in 2022 due to the constant sexual harassment, propositioning, and touching she experienced at the Corte Madera location. She never returned to her position.

**M. Roseville**

111. Female employees, including hostesses and servers, at Defendant's Roseville location were subjected to unwelcome, severe, and/or pervasive sexual harassment by male employees, including dishwashers, servers, and cooks. This harassment was frequent and constant throughout the female employees' employment,

especially given management's indifferent attitude toward sexual harassment in the workplace.

112. On a regular basis, male employees at the Roseville location sexually harassed a female hostess, including asking her whether "her boyfriend pleasured her treasure chest." Dishwasher Mohammed Abdelhai showed female employees porn on his cell phone, and even after a female hostess reported this conduct to Chef Israel Gomez in 2019, Chef Gomez failed to take corrective action and Dishwasher Mohammed continued showing porn to other female employees at work.

113. Similarly, in 2023, Manager Chris Rekalske both witnessed and received a report from a female hostess that a customer was sexually harassing her. Manager Rekalske did nothing in response to the report and continued to welcome the customer to the restaurant. In 2022, Manager Ryan Fajardo witnessed multiple male servers sexually harassing a teenage kitchen worker, including telling the kitchen worker they were attracted to her pigtails because they made her look younger, placing their hands on her back, and giving her unwanted hugs. Manager Fajardo did nothing in response to this open and notorious harassment, instead allowing the harassment to continue.

**N. San Jose**

114. Female employees, including hostesses and servers, at Defendant's San Jose location were subjected to unwelcome, severe, and/or pervasive sexual harassment by its male employees. This harassment was frequent and constant throughout the female employees' employment. Managers at the San Jose location followed Defendant's standard operating procedure of condoning and tolerating sexual harassment and some even engaged in sexual harassment themselves.

115. For example, in 2018 and 2019, Assistant Manager Rumaldo Alvarez repeatedly slapped a female server's butt. Leering up and down her body and biting his lips, he also told this same female server she looked good and repeatedly asked her to go out on a date with him, despite her repeated rejections of his advances. The continuous verbal and physical harassment by Assistant Manager Alvarez ultimately led to the

female server to resign her employment in 2019. In 2022, Manager John Chacon sexually harassed a female server, including caressing her waist and encouraging her to drink alcohol with him. When she declined his advances, Manager Chacon retaliated by reducing her hours.

116. Management's sexual harassment of female employees emboldened other male staff to sexually harass their female colleagues. For example, a male sous chef repeatedly sexually harassed a female prep cook from 2018 through 2021. When the female prep cook reported the sous chef's harassment to Executive Chef Gazzana in 2018, Chef Gazzana became angry, told her that he did not want to talk about it, and did not take any corrective action. This led to more severe harassment by the sous chef, including his fondling of the female prep cook's hips and buttocks and sliding his hand below her clothing and down her breasts. The sous chef also thrust his penis against the female prep cook's buttocks and moaned, "Oh baby."

117. The same female prep cook was also sexually harassed by Catering Director Sergio Lopez, who repeatedly asked her to be part of a threesome with he and his wife. After facing continuous sexual harassment for years, the female prep cook decided she could not return to her position at Il Fornaio after the COVID-19 pandemic.

**O. Sacramento**

118. Female employees at Defendant's Sacramento location were subjected to unwelcome, severe, and/or pervasive sexual harassment by male staff. This harassment was frequent and constant throughout the female employee's employment. Sexual harassment by supervisors at the Sacramento location represented yet another example of Defendant's pattern or practice of condoning and tolerating sexual harassment.

119. For example, in 2023, Sous Chefs Victor Palafox and Crisanto Bejar regularly harassed a female cook about her sexual orientation, including showing her nude photos of other women and repeatedly asking her invasive questions about whether she was interested in other female employees. Although the sous chefs openly harassed the female cook in front of a general manager, the general manager did not take any

disciplinary action against them and the harassment continued. Due to the continuous harassment and management's failure to stop it, the female cook was compelled to resign her employment in 2023.

**P. Santa Clara**

120. Female employees, including hostesses and kitchen workers, at Defendant's Santa Clara location were subjected to unwelcome, severe, and/or pervasive sexual harassment by its male employees, including managers This harassment was frequent and constant throughout the female employees' employment. Santa Clara is another example of the failure of Defendant's management to deal with sexual harassment properly.

121. For example, in 2021, Assistant Manager Ethan Bratko told a female hostess in front of other employees that her body was "unappetizing to look at" and criticized her choice of clothes for "showing her stretch marks." The hostess immediately reported the harassment to Manager Sophia, but Manager Sophia's only response was to have Manager Bratko be on a different schedule than the hostess one week. After that week, the hostess was forced to continue working with Manager Bratko and had to check herself into a hospital due to the ongoing emotional distress.

122. Other male employees at the Santa Clara location also harassed their female colleagues. For example, three male servers made almost daily unwanted sexual comments to a female pantry worker, including telling her, "What pretty lips," "What nice legs," and "I want to kiss those lips." Chef George also told this same female pantry worker to wear see-through leggings, which would show her underwear. Due to the continuous sexual harassment that she faced at the Santa Clara location, the female pantry worker was compelled to resign in 2019.

**Q. Santa Monica**

123. Female employees, including female hostesses, at Defendant's Santa Monica location were subjected to unwelcome, severe, and/or pervasive sexual harassment by its male employees, including managers and servers. This harassment was frequent and constant throughout the female employees' employment. As with Defendant's other

locations, management at Defendant's Santa Monica location followed Defendant's standard operating procedure of tolerating and condoning sexual harassment.

124. For example, Servers Hernan and Saul repeatedly leered at the butts and breasts of a female hostess and other female employees. Although the female hostess reported the sexual harassment to Assistant Manager Brieana Ventrice in 2022, management at the Santa Monica location failed to take corrective action and the sexual harassment continued. A manager at the Santa Monica location also made frequent sexual advances towards a female hostess, including asking her to go out on dates with him. When she opposed the sexual harassment and rejected his advances, the manager retaliated by firing her in 2022.

…

125. The effect of the practices complained of above has been to deprive Charging Party and a class of other similarly aggrieved females of equal employment opportunities and otherwise adversely affect their working conditions because of their sex and/or because of their engagement in protected activities in opposition to unlawful employment practices.

126. The unlawful employment practices complained of above were intentional.

127. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Charging Party and a class of similarly aggrieved females.

128. As a direct and proximate cause of Defendant's acts as stated above, Charging Party and a class of aggrieved females have emotional pain, suffering, humiliation, inconvenience, loss of enjoyment of life, and damages, to be proven at trial.

129. As a direct and proximate cause of Defendant's acts as stated above, Charging Party and a class of aggrieved females suffered loss of earnings, including back pay, front pay, and benefits in amounts according to proof.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practices in violation of Sections 703(a) and 704(a) of Title VII.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for female employees, and which eradicate the effects of its past and present unlawful employment practices and to ensure that it does not engage in further unlawful practices in violation of Sections 703(a) and 704(a) of Title VII.

C. Order Defendant to make the Charging Party and the class of aggrieved females whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above, in amounts to be determined at trial.

D. Order Defendant to make the Charging Party and the class of aggrieved females whole by providing compensation for past and future non-pecuniary losses, pursuant to Title VII, resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

E. Order Defendant to pay the Charging Party and the class of aggrieved females punitive damages, pursuant to Title VII, for its malicious or reckless conduct as described above, in amounts to be determined at trial.

F. Order Defendant to make Charging Party and the class of aggrieved females whole by providing appropriate backpay with interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission the costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: April 1, 2024

Respectfully Submitted,

KARLA GILBRIDE,
General Counsel

CHRISTOPHER LAGE,
Deputy General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 "M" Street, N.E.
Washington, D.C. 20507



By: ______________________________

ANNA Y. PARK
Regional Attorney
Los Angeles District Office
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION