**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Plaintiff,
v.
IL FORNAIO (AMERICA) LLC; AND DOES 1-10, INCLUSIVE,
Defendants.

Case No. 2:22-cv-05992-SPG-JPR

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 63]**

Before the Court is Defendant Il Fornaio (America) LLC's ("Defendant") Motion for Partial Dismissal of Claims under Rule 12(b)(1) based on Lack of Subject Matter Jurisdiction ("Motion"). (ECF No. 63-1 ("Mot.")). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this matter suitable for resolution without oral argument, *see* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15, and **DENIES** the Motion.

## I. BACKGROUND

### A. Factual Background

Defendant owns and operates fine dining Italian restaurants in California, Colorado, and Nevada. (ECF No. 39 ("FAC") ¶ 6; ECF No. 63-3 ("Laymon Decl.") ¶ 3). Seventeen of Defendant's restaurants are located in the state of California. (Laymon Decl. ¶ 3).

On October 7, 2019, the charging party ("Charging Party") filed a Charge of Discrimination ("the Charge") with the U.S. Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") alleging discrimination based on sex against Defendant, her employer. (ECF No. 63-6 ("Charge") at 2–3). In the narrative portion of the Charge, the Charging Party alleges that between February 1, 2017, and May 26, 2019, she and other female co-workers were "subjected to sexual harassment and a hostile work environment by male co-workers and management staff." (*Id.*) The Charging Party provides examples of the challenged conduct and states that "[t]hroughout the entire time [she] made it known that this conduct and comments were unwelcomed" and also that she "reported these incidents to management." (*Id.*). The Charging Party further states that "nothing was done and the conduct continued." (*Id.*). "[B]ecause [she] could no longer tolerate the hostile work environment," the Charging Party alleges that on or about May 19, 2024, she submitted her letter of resignation to the General Manager, (*Id.*; FAC ¶ 51). Additionally, the Charging Party alleges she believes both she and a class of female employees have been discriminated against based on their sex, in violation of Title VII of the Civil Rights Act of 1964. (Charge at 3). The Charging Party lists on the Charge the address of 24 W Union St, Pasadena, CA 91103, the location for the particular restaurant where the Charging Party worked. (*Id.* at 2).

On December 27, 2019, Defendant, through a letter from its counsel, responded to the Charge. (ECF No. 63-8). Defendant's response acknowledged that the Charging Party had made complaints to the General Manager and Chef of her restaurant at that time but stated Defendant had "timely and appropriately addressed every complaint raised by [the Charging Party] during her employment, even those raised at the time of her resignation." *See* (*Id.* at 9).

According to Plaintiff, after receiving the Charge, Plaintiff conducted its investigation of the Charge, including interviewing witnesses and obtaining documents from Defendant. *See* (ECF No. 65 ("Opp.") at 9–10). On April 7, 2020, Plaintiff issued a Request for Information ("RFI #1") to Defendant. (ECF No. 63-9; Mot. at 11). RFI #1

requested that Defendant produce information and documents companywide, including among other information, Defendant's total number of employees from 2017 to the date of RFI #1; an organizational chart for Defendant; Defendant's personnel manual and employee handbook and a description of the process of distributing the handbooks to employees; all records of sexual harassment training received by all management and non-management employees; and information of all complaints of sexual harassment, inappropriate behavior, or retaliation. (ECF No. 63-9).

On June 30, 2020, Defendant represented that it has seventeen restaurants in California and produced the employee handbook applicable to its California restaurants. (ECF No. 65-6). Further, it stated that its Senior Vice President of Human Resources, Mim McNulty, trained management level employees how to handle and investigate harassment claims. (*Id.* at 4). Defendant stated, however, that "[b]ecause [the Charging Party] worked exclusively at the Pasadena restaurant and never reached out to corporate Human Resources with any complaint of harassment until her resignation letter, [the Charging Party's] individualized experience of alleged harassment at the Pasadena restaurant is no basis for a disparate treatment class action lawsuit against [Defendant]." (*Id.* at 2). Defendant thus generally limited its responses to RFI #1 and production of other documents to Defendant's Pasadena location. *See e.g.*, (*Id.* at 3–4, 6, 8).

Meanwhile, Plaintiff's investigator interviewed the Charging Party. *See* (ECF No. 65-10). The investigator's notes reflect that the Charging Party had reported her sexual harassment to an individual in Defendant's Human Resource Department and had informed the investigator of other employees being harassed. (*Id.*).

On May 12, 2021, Plaintiff's investigator notified Defendant that Plaintiff's investigation "revealed that the class allegations in the charge involve individuals beyond those employed at [Defendant's] Pasadena location." (ECF No. 65-7 ("May 12 Letter"). The May 12 Letter stated that its purpose was to inform Defendant of Plaintiff's intent of "expanding its investigation to include all locations in which Chef Luis Escobar has worked

from in or around 2017 to the present." (*Id.*). As such, Plaintiff requested that Defendant "submit information and records relevant to the expanded locations." (*Id.*).

The same day, Plaintiff issued a second Request for Information ("RFI #2") to Defendant at its headquarters in Corte Madera, California. *See* (ECF No. 65-8 ("RFI #2")). RFI #2 requested, among other information, the production of a complete copy of the personnel files of several individuals, including Chef Luis Escobar, and information and documents regarding any complaints of "discrimination based on sex, sexual harassment, harassment, inappropriate behavior, or retaliation . . . at any location at which Chef Luis Escobar worked." (*Id.* at 2–3). RFI #2 also requested to interview Mim McNulty, among other individuals. (*Id.* at 4).

Although the parties met and conferred at least twice regarding information Plaintiff was seeking relating to the Charging Party's class allegation and other restaurant locations, Defendant objected to providing information regarding all of Defendant's employees and any restaurant locations other than Pasadena and Manhattan Beach. *See* (ECF Nos. 65-9, 65-14, 65-15 at 1) (In response to Plaintiff's investigator seeking information regarding the Charging Party's class allegations, Defendant's counsel "argued that the EEOC had no basis or reason to request information for all of [Defendant's] employees.").

On January 11, 2022, Plaintiff issued a Letter of Determination to Defendant and the Charging Party. *See* (ECF No. 65-12). The Letter of Determination was addressed to "Il Fornaio (America) LLC" in "Corte Madera, CA." (*Id.* at 1). It provides that the EEOC's examination of evidence "supports a finding that there is reasonable cause to believe that the Charging Party was sexually harassed due to her sex (female) . . . [and] that a class of similarly situated individuals were sexually harassed and retaliated against and/or constructively discharged." (*Id.*). The Letter of Determination, which did not limit its findings to a particular restaurant location, invited Defendant to participate with the EEOC in informal conciliation to possibly resolve the Charge. (*Id.* at 1–2).

On April 21, 2022, Plaintiff issued a letter to Defendant at its Pasadena location stating that efforts to conciliate the charge were unsuccessful, that no further efforts would

be made, and that the EEOC would review the case to determine if it would take further action. *See* (*Id.*; ECF No. 65-13).

**B. Procedural History**

On August 24, 2022, Plaintiff filed the underlying complaint against Defendant alleging Defendant engaged in sexual harassment, retaliation, and constructive discharge, in violation of Title VII. (ECF No. 1 ("Complaint")). On January 1, 2023, Defendants filed a Motion to Dismiss the Complaint or for Plaintiff to provide a more definite statement, *see* (ECF No. 12), which the Court granted, in part, and denied, in part, *see* (ECF No. 38). After the Court granted leave to amend the complaint, on April 1, 2024, Plaintiff filed the First Amended Complaint ("FAC"). *See* (FAC). Plaintiff brings this action alleging that Defendant "has engaged in companywide pattern or practice of unlawful employment practices by subjecting Charging Party and a class of aggrieved individuals to a hostile work environment based on sex (female) across its locations . . . ." (*Id.* at 2).

Defendant filed the instant Motion to Dismiss on August 8, 2024. *See* (Mot.). Plaintiff opposes the Motion,[1] (Opp.). On September 4, 2024, Defendant filed a reply in support of the Motion (ECF No. 66 ("Reply")).[2]

---

[1] Defendant objects to the declaration of Derek W. Li, submitted by Plaintiff in support of its Opposition. (ECF No. 67). Defendant argues primarily that the declaration fails to offer sufficient foundation for Mr. Li's knowledge, among other grounds for objection. The Court overrules the objection. Mr. Li represents he is a trial attorney in the Los Angeles District Office of the EEOC and has knowledge of the investigative file and investigation which the Plaintiff undertook.

[2] Defendant request that the Court take judicial notice of "[a]n excerpt from Section CM-602 Evidence of the EEOC's Compliance Manual." (ECF No. 64 at 2). Section CM-602 of the Compliance Manual is a "portion of the EEOC Compliance Manual" that "provides charge processing and investigation instructions for investigators." (*Id.*). The Court notes that the portions of the excerpt highlighted by Defendant are similar to requirements set forth in the Act and case law, thus the Court need not take judicial notice of the documents in ECF Nos. 64 and 64-1. *See e.g., Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).

## II. Legal Standard

Title VII of the Civil Rights Act of 1964 ("Title VII" or the "Act"), 78 Stat. 241, 42 U.S.C. § 2000e *et seq.*, prohibits an employer from discriminating against any employee based on that employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Act "sets out a detailed, multi-step procedure through which the [EEOC] enforces the statute's prohibition on employment discrimination." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 483 (2015).

### A. The Enforcement Process

The EEOC enforcement process generally starts "when 'a person claiming to be aggrieved' files a charge of an unlawful workplace practice with the EEOC." *Id.* (quoting 42 U.S.C. § 2000e-5(b)). After receiving a charge, the EEOC notifies the employer of the charge and undertakes and investigation. *Mach Mining,* 575 U.S. at 483. *See also Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 551 (2019). If the EECO finds "'reasonable cause' to believe the charge is true, the Act instructs the [EEOC] to 'endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Fort Bend,* 587 U.S. at 544 (*quoting* 42 U.S.C. § 2000e-5(b)). *See also Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1198 (9th Cir. 2016). The Act gives the EEOC "wide latitude over the conciliation process." *Mach Mining*, 575 U.S. at 488. The Act requires that the EEOC "communicate in some way (through 'conference, conciliation, and persuasion') about an 'alleged unlawful employment practice' in an 'endeavor' to achieve an employer's voluntary compliance." *Id.* at 494 (quoting 42 U.S.C. § 2000e-5(b)). As the Supreme Court explained:

> That means the EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of "reasonable cause." Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result. And the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity

> to remedy the allegedly discriminatory practice. Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute.

*Mach Mining*, 575 U.S. at 494 (internal citations omitted). If informal methods do not resolve the charge, the EEOC may bring a civil action against the employer. *Fort Bend,* 587 U.S. at 544. The conciliation requirements are the same regardless of whether the EEOC brings a claim under § 2000e–5 (a § 706 claim) or § 2000e–6 (a § 707 pattern-or-practice claim). *See also Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1201 (9th Cir. 2016).

B. Judicial Review

The judicial review of the step-by-step requirements conducted by the EEOC is "relatively bare bones," with the district court looking "only to whether the EEOC attempted to confer about a charge, and not what happened (*i.e.*, statements made or positions taken) during those discussions." *Mach Mining*, 575 U.S. at 494. The "narrow" scope of review reflects "the abundant discretion the law gives the EEOC to decides the kind and extent of discussions appropriate in a given case," and "courts may not impinge on that latitude." *Id.* at 495. "A sworn affidavit from the EEOC stating that it has performed the obligations noted above but that its efforts have failed will usually suffice to show that it has met the conciliation requirement." *Id.* at 494. "If, however, the employer provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct factfinding necessary to decide that limited dispute." *Id.* at 495. If the district court finds in favor of the employer, "the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance." *Id.* (citing 42 U.S.C. § 2000e-5(f)(1) and stating it "authoriz[es] a stay of a Title VII action for that purpose"). *See also Geo Grp.*, 816 F.3d at 1198–1199.

C. Jurisdiction and Scope

As discussed below, Title VII's step-by-step enforcement process "is not jurisdictional. *See Fort Bend Cnty.,* 587 U.S. at 543, 547; *Texas v. Davis*, 587 U.S. 541, 543 (2019). Instead, "[f]ederal courts exercise jurisdiction over Title VII actions pursuant to 28 U.S.C. § 1331's grant of general federal-question jurisdiction," as well as Title VII's own jurisdictional provisions, 42 U.S.C. § 2000e–5(f)(3)." *Fort Bend Cnty.,* 587 U.S. at 550.

The scope of the EEOC's court action, however, does depend on the scope of the charge and the EEOC's investigation. *See Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). "Each step along the administrative path—from charge to investigation and from investigation to lawsuit—must grow out of the one before it." *E.E.O.C. v. American Samoa Government*, No.11-cv-00525, 2012 WL 4758115 *6 (D. Haw. Oct. 5, 2012). "In other words, the EEOC's investigation must occur within the 'scope of the charge'—that is, it must reasonably grow out of the charge underlying it, and a lawsuit must be likely or reasonably related to the underlying EEOC charge." *Id.* (internal citations omitted)*; Geo Grp*., 816 F.3d at 1204. "[A]n EEOC civil suit may allege any discrimination 'stated in the charge itself or discovered in the course of a reasonable investigation of that charge, provided such additional discrimination was included in the EEOC "reasonable cause" determination and was followed by compliance with the conciliation procedures of the Act.'" *Geo Grp.*, 816 F.3d at 1205. "[A] single charge of discrimination may be sufficient to put an employer on notice that additional people may be subject to the same unlawful employment practices."). *Id.* at 1203. Further, where an employer has adequate notice of the EEOC investigating discrimination claims on behalf of employees at one of its locations, the EEOC may bring discrimination claims on behalf of employees at additional locations to which employees from the predecessor location transferred. *See Lucky Stores, Inc. v. E.E.O.C.*, 714 F.2d 911, 913 (9th Cir. 1983) (declining at the time to decide generally whether to accept the rule from the Fourth Circuit in *EEOC v. American National Bank*, 652 F.2d 1176 (4th Cir.1981) "that unified operation and control of separate plants is itself

sufficient to permit their inclusion in the litigation," but holding notice provided to employer of EEOC's investigation of sexual discrimination claims at employer's predecessor location was sufficient to bring claims on behalf of employees at two new facilities to which two-third of the employees had transferred).

Additionally, "[t]he EEOC may seek relief on behalf of individuals beyond the charging part[y] and for alleged wrongdoing beyond those originally charged" that it uncovers during its investigation so long as there is a reasonable nexus between the initial charge and the subsequent allegations in the complaint. *See EEOC v. Dillard's Inc.*, Case No. 08-cv-1780, 2011 WL 2784516 (S.D. Cal. July 14, 2011). *See also American Samoa Government*, 2012 WL 478115 *7. In determining what charges are included in the action, courts are to construe the charge liberally but should also consider whether the charge provided adequate notice of the claims. *Sosa*, 920 F.2d at 1456.

## III. DISCUSSION

Defendant argues that, because the Charge and Plaintiff's pre-litigation investigation were focused on only its restaurants located in Pasadena and Manhattan Beach and Plaintiff's pre-litigation investigation of the Charge is a "jurisdictional prerequisite" to Plaintiff filing a civil action against an employer, the Court "is without [subject matter] jurisdiction to address alleged claims involving [Defendant's] other 18 restaurant locations . . . ." (Mot. at 7–8). Defendant also argues the Court lacks jurisdiction because the "manner in which [Plaintiff] investigated the Charge before filing this lawsuit failed to meet any objective measure of a 'genuine investigation' or provide reasonable notice to [Defendant] that any restaurant location other than Pasadena and Manhattan Beach was included in the investigation." (*Id.* at 30). As such, Defendant asserts the Court should dismiss from the suit all claims involving restaurant locations other than Pasadena and Manhattan Beach because the Court lacks subject matter jurisdiction. (*Id.* at 31).

Plaintiff responds that Defendant's Motion should be denied outright because this Court has subject matter jurisdiction over Plaintiff's Title VII sexual harassment, retaliation, and constructive discharge claims. (Opp. at 7). Additionally, Plaintiff argues

that its pre-litigation investigation is not a prerequisite to this Court having subject matter jurisdiction over the case and, in any event, judicial review of Plaintiff's pre-litigation investigation is limited. (*Id.* at 7, 20–27). Further, asserts Plaintiff, Defendant has notice of the scope of Plaintiff's claims, which are reasonably related to the Charge and it's prelitigation investigation. (*Id.* at 25–26).

**A. The Court has Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over Plaintiff's claims. Plaintiff's sexual harassment, retaliation, and constructive discharge claims all arise under Title VII. As the Supreme Court has explained, federal courts exercise jurisdiction over Title VII claims "pursuant to 28 U.S.C. § 1331's general grant of federal-question jurisdiction, and Title VII's own jurisdictional provision, 42 U.S.C. § 2000e–5(f)(3) (giving federal courts 'jurisdiction [over] actions brought under this subchapter')."[3] *Fort Bend*, 587 U.S. at 550–51.

Before *Fort Bend*, the Ninth Circuit, along with several other Courts of Appeals, held the prerequisites to suit under Title VII to be jurisdictional—that is, that a failure to abide by them deprived a court of subject matter jurisdiction over claims. *See e.g.*, *Sommatino v. United States*, 255 F.3d 704 (9th Cir. 2001). In *Fort Bend*, the Supreme Court took up the issue "to resolve [the] conflict among the Courts of Appeals over whether Title VII's charge-filing requirement is jurisdictional." *Fort Bend*, 587 U.S. at 547. Citing *Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145, 153 (2013), the Court observed that, in recent years, it had undertaken "[t]o ward off profligate use of the term" "jurisdiction." *Id.* at 547–48. The Court explained that "the word 'jurisdictional' is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." *Id.* at 548. Further, it stated that "[c]haracterizing a rule as a limit on subject-matter jurisdiction 'renders it unique in our

[33] Plaintiff invoked these jurisdictional provisions in the FAC. *See* (FAC ¶ 1).

adversarial system,'" because, among other reasons, challenges to jurisdiction may be raised at any time, courts must consider jurisdictional issues *sua sponte*, and "harsh consequences attend the jurisdictional brand." *Id.* at 548 (internal citations omitted). The Supreme Court thus pointed out that it has "stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," but about which deficiencies in following the rules may be forfeited if untimely raised. *Id.* at 548–49 (internal citations omitted). After discussing examples of other nonjurisidictional, "mandatory claim-processing rules and other preconditions to relief," the Supreme Court unanimously held that "Title VII's charge-filing requirement is not of jurisdictional cast." *Id.* at 549–50. The charge-filing "provisions do not speak to a court's authority . . . or refer in any way to the jurisdiction of the district courts . . . ." *Id.* at 551 (internal citations and quotation marks omitted). "Instead, Title VII's charge-filing provisions speak to . . . a party's procedural obligations . . . They require complainants to submit information to the EEOC and to wait a specified period before commencing a civil action." *Id.* at 551.

Defendant's Motion does not mention *Fort Bend* at all. *See* (Motion). In response to Plaintiff's Opposition discussing *Fort Bend's* holding at length, however, Defendant's Reply attempts to distinguish *Fort Bend*, arguing its holding does not apply here because it involved an action brought by a private individual plaintiff, not the EEOC, and did not involve the EEOC's failure to comply with its pre-litigation investigatory obligations under 42 U.S.C. § 2000e-5(b). *See* (Reply at 7–9).

It is true that, in reaching its holding, the Supreme Court discussed the EEOC's process of investigating and conciliating a charge pursuant to 42 U.S.C. § 2000e–5(b) after a charge has been filed but did not explicitly state in its analysis that this process is part of the "charge-filing requirements" that it ultimately found to be nonjurisdictional. *See Fort Bend*, 587 U.S. at 544, 550. Nevertheless, in determining that the failure to meet the claim-filing requirement for bringing a Title VII action does not strip a district court of subject

matter jurisdiction, the Supreme Court stressed that "when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Fort Bend*, 587 U.S. at 550 (citation omitted and cleaned up). Moreover, 42 U.S.C. § 2000e–5(b), which sets forth the EEOC's requirements for serving notice of the charge, investigating the charge, determining whether there is reasonable cause that the charge is true, and engaging in conciliation efforts with the employer before bringing suit, does not speak to a district court's authority or "refer in any way to the jurisdiction of the district courts." *Id.* at 551. *See also E.E.O.C. v. Glob. Horizons, Inc.*, 940 F. Supp. 2d 1316, 1325 (E.D. Wash. 2013) (stating, "[t]hat the subchapter requires the EEOC to notify the respondent, investigate the alleged unlawful employment practice, make a reasonable-cause determination, and meaningfully conciliate the matter prior to bringing a lawsuit does not vitiate a federal court's subject-matter jurisdiction to hear lawsuits brought by the EEOC under § 2000e–5."). As such, this Court does not treat § 2000e–5(b) as jurisdictional in character. Moreover, to the extent that *Fort Bend* cannot be reconciled with previous decisions within this circuit holding the EEOC's prelitigation requirements are jurisdictional, this Court considers itself bound by *Fort Bend*. *See generally Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (explaining that "where intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority," both Ninth Circuit panels and district courts "should consider themselves bound by the intervening higher authority"). *See also Vasquez v. Kiewit Infrastructure W., Co.*, No. 19-cv-00513, 2020 WL 2842671, at *4 (D. Haw. June 1, 2020) ("The Supreme Court's decision in *Fort Bend* Cty., *Texas* . . . , abrogates the Ninth Circuit Court of Appeals' decisions which have ruled that administrative exhaustion is jurisdictional.").[4] Thus, because the Motion seeks dismissal based on lack of subject matter jurisdiction under Rule

[4] *See also Glob. Horizons*, 940 F. Supp. 2d at 1325 (examining *Sebelius* decided well before *Fort Bend* and determining that the Supreme Court had overturned those Ninth Circuit cases that had held § 2000e–5's pre-lawsuit requirements are jurisdictional requirements).

12(b)(1) and the Court has subject matter jurisdiction over the suit, the Motion is denied insofar as it is based on that ground.

**B. Limited Judicial Review of The EEOC's Conciliation Efforts and A Stay Are Warranted**

Defendant's Motion argues that FAC's allegations, insofar as they allege harassment, retaliation, and the constructive discharge of women who worked at locations other than Defendant's Pasadena and Manhattan Beach locations, impermissibly exceed the jurisdictional scope of Plaintiff's pre-lawsuit investigation § 2000–e5(b) and should be dismissed for lack of subject matter jurisdiction. (Mot. at 17, 22–23, 25–31). Defendant's Reply pivots somewhat from its jurisdictional argument asserting, instead, that the Court should review whether the EEOC complied with its investigation responsibilities under § 2000e–5(b) and should limit the suit to the scope of that investigation. *See* (Reply at 10 ("To be clear, [Defendant] is not asking Court to review the sufficiency of the EEOC's investigation of the Pasadena and Manhattan Beach locations. Rather [Defendant] is asking the Court to review whether the EEOC conducted an investigation of locations other than Pasadena and Manhattan Beach locations . . . ."), *id.* at 19 (". . . [T]he law is clear that the EEOC's lawsuit is limited to the scope of its investigation.")).

Plaintiff responds that, during its investigation of the Charge, it sought information and documents on a companywide basis, including seeking sexual harassment complaints and the identities and contact information of employees who made such complaints, but Defendant obstructed and impeded that investigation by limiting its responses to just the Pasadena and Manhattan Beach locations. (Opp at 9–11, 23–25; ECF No. 65-1 ("Li Decl.")). Additionally, Plaintiff argues that its investigation revealed that the sexual harassment was companywide and involved upper management, that it did not limit its findings to Defendant's Pasadena or Manhattan Beach locations, and thus Defendant was on notice of the scope of the allegations in the FAC. (Opp. at 12–14, 25; Li Decl. ¶ 3). Finally, Plaintiff argues based on the *Mach Mining* case that review of its investigation

should be limited, as Plaintiff has met the requirements for bringing claims beyond the locations of Pasadena and Manhattan Beach. (Opp. at 24–27).

A claim exceeds the scope of an EEOC Charge if the claim references different actors, different violations, or different time frames than what is listed in the Charge. *Fitzer v. Chevron Corp*., No. 05-cv-507, 2006 WL 462552, at *2 (E.D. Cal. Feb. 27, 2006) (*citation omitted*); *Shah v. Mt. Zion Hospital & Medical Center*, 642 F.2d 268, 272 (9th Cir. 1981) (holding a plaintiff's newly raised race, color, and religion claims were outside the scope of an EEOC complaint even when based on the same actions of the employer because the "theories [were] never investigated by the EEOC."). As it relates to sexual harassment, courts have found, however, that "additional incidents of sexual harassment against members of the same class as the Charging Party, at the same location as originally claimed, and during the same time period as originally claimed, clearly fall within the scope of the EEOC's investigation." *United States Equal Emp. Opportunity Comm'n v. Bay Club Fairbanks Ranch, LLC*, 475 F. Supp. 3d 1099, 1105 (S.D. Cal. 2020).

Here, in support of its Opposition, Plaintiff has submitted a declaration under penalty of perjury from its counsel representing that, before bringing this suit, it performed its investigation and conciliation obligations under Title VII. *See generally* (Li Decl.and exhibits). *See also Mach Mining*, 575 U.S. at 494 ("A sworn affidavit from the EEOC stating that it has performed the obligations noted above but that its efforts have failed will usually suffice to show that it has met the conciliation requirement.").

However, Defendant has provided a competing declaration under penalty of perjury that, from the Court's review, is arguably sufficient to raise a dispute regarding whether the scope of Plaintiff's investigation and conciliation was limited to Defendant's Pasadena and Manhattan Beach restaurant locations. *See generally* (ECF No. 63-4 ("Sinclair Decl.") and exhibits). *See also Mach Mining*, 575 U.S. at 494 ("If . . . the employer provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct factfinding necessary to

decide that limited dispute."). The Court will therefore consider the parties' dispute regarding the scope of Plaintiff's investigation and conciliation efforts as they relate to the allegations in the FAC.

From its review of the record and caselaw, Plaintiff's claims in the FAC are "like or reasonably related" to the allegations in the Charge and Plaintiff's investigation. The Charging Party made it clear that her allegations involved discrimination based on sex and that her allegations were not limited to just her experiences. *See* (Charge at 2–3). In the narrative portion of the Charge, the Charging Party alleged that between February 1, 2017, and May 26, 2019, she and other female co-workers were "subjected to sexual harassment and a hostile work environment by male co-workers and management staff." (*Id.*) Additionally, the Charging Party alleged she believes both she and a class of female employees were discriminated against based on their sex, in violation of Title VII of the Civil Rights Act of 1964. (*Id.* at 3).

The nature and scope of the Charge and Plaintiff's pre-lawsuit investigation efforts also provided Defendant with notice of the potential geographical scope of Plaintiff's claims—namely, other restaurants besides Defendant's Pasadena and Manhattan Beach locations.[5] Based on RFI #1, it does not appear that Plaintiff initially limited its investigation to conduct involving the Charging Party or the scope of its investigation to just the Pasadena and Manhattan Beach locations. Plaintiff's April 7, 2020 RFI #1 requested that Defendant produce information and documents companywide, including among other information, Defendant's total number of employees from 2017 to the date of RFI #1; Defendant's organizational chart; Defendant's personnel manual and employee handbook, and a description of its process of distributing the handbooks to employees; all records of sexual harassment training to all management and non-management employees;

[5] The parties do not dispute the contents of the relevant communications between them, but disagree on the appropriate inferences to be drawn from them.

and information of all complaints of sexual harassment, inappropriate behavior, or retaliation. (ECF No. 63-9 at 2–3).

Further, on May 12, 2021, Plaintiff notified Defendant that its investigation "revealed that the class allegations in the charge involve individuals beyond those employed at [Defendant's] Pasadena location." *See* (May 12 Letter). Further, Plaintiff's May 12 Letter informed Defendant of Plaintiff's intent of "expanding its investigation to include all locations in which Chef Luis Escobar has worked from in or around 2017 to the present." (*Id.*). Plaintiff's RFI #2 requested, among other information, the production of a complete copy of the personnel files of several individuals, including Chef Luis Escobar, and information and documents regarding any complaints of "discrimination based on sex, sexual harassment, harassment, inappropriate behavior, or retaliation . . . at any location at which Chef Luis Escobar worked." (ECF No. 65-8 at 2–3). Plaintiff also requested an interview with Defendant's Senior Vice President of Human Resources at the companywide level. (*Id.* at 4).

Finally, Plaintiff's January 11, 2022, Letter of Determination to Defendant specifically informed Defendant that Plaintiff's examination of evidence "supports a finding that there is reasonable cause to believe that the Charging Party was sexually harassed due to her sex (female) . . . [and] that a class of similarly situated individuals were sexually harassed and retaliated against and/or constructively discharged." *See* (ECF No. 65-12 at 1). The Letter of Determination does not expressly limit its findings to conduct involving the Charging Party or to a particular restaurant location. The FAC's allegations, which allege that "Defendant has engaged in a pattern or practice of unlawful employment practices by subjecting female employees companywide to a hostile work environment based on sex," that the harassment included "Defendant's executives, managers, and employees alike. . ., and that the problem of harassment is widespread and commonplace at Defendant's restaurants," *see* (FAC ¶¶ 21–22, 24; *see also* FAC ¶¶ 60, 71, 75, 98–99), are reasonably related to Plaintiff's underlying pre-lawsuit investigation and the Charging

Party's allegations of sexual harassment, retaliation, and constructive discharge suffered by her and a class of similarly situated women in the Charge.

Although Defendant argues that the Charge, Plaintiff's pre-lawsuit investigation, and its conciliation efforts focused on the Pasadena and Manhattan Beach restaurant locations only, Defendant was on notice from Plaintiff's RFI #1 that Defendant potentially faced claims arising from employees working at other locations. As stated previously, during its pre-lawsuit investigation, Plaintiff specifically requested information regarding complaints from all of Defendant's other restaurant locations. Apart from providing companywide harassment policies and training manuals, however, Defendant repeatedly refused to provide companywide information and appears to have limited access to certain of Defendant's upper management personnel. *See* (ECF No. 65-14); (ECF No. 65-15 at 1) (In response to the EEOC investigator seeking information in response to the Charging Party's class allegations, Defendant's counsel "argued that the EEOC had no basis or reason to request information for all of [Defendant's] employees.").

The Court is concerned, however, that, in response to Defendant expressly limiting its response to RFI #1 to just the Pasadena location, Plaintiff's investigator's communications with Defendant after RFI #1 appear to have acquiesced to Defendant's limitation. *See e.g.*, (Sinclair Decl. ¶ 11) (wherein Plaintiff's investigator stated he "conceded" to Defendant only providing information from its Pasadena location)). Further, even after Plaintiff notified Defendant that it was expanding its investigation, the May 12 Letter is unclear that the investigation had expanded beyond Defendant's Pasadena and Manhattan Beach locations. *Compare* (May 12 Letter) (stating its purpose was to inform Defendant of Plaintiff's intent of "expanding its investigation to include all locations in which Chef Luis Escobar has worked from in or around 2017 to the present.") *with* (ECF No. 63-2 ("Escobar Decl.") ¶ 4) ("From January 1, 2017 to present, I have not worked at any Il Fornaio locations other than the Pasadena and Manhattan Beach locations.").

The Court also notes in light of the ambiguities introduced by the correspondence referenced above that Plaintiff's Letter of Determination did little to clear up the "scope of

locations" issue when providing the requisite information about the specific allegations—namely, by "properly describ[ing] both what the employer has done" and, more importantly, "which employees (or what class of employees) have suffered as a result,"—as is contemplated by *Mach Mining,* 575 U.S. at 494. Because of this concern, the Court finds that the proper remedy is not dismissal of the claims involving locations other than Pasadena and Manhattan Beach, but to order Plaintiff to undertake the mandated efforts to obtain Defendant's voluntary compliance regarding all the locations and types of claims Plaintiff alleges in the FAC, including promptly issuing an amended Letter of Determination that informs Defendant about the specific allegations upon which reasonable cause is based as to the locations alleged in the FAC. *See Mach Mining*, 575 U.S. at 495.

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendant's Motion to Dismiss is **DENIED;**

2. Pursuant to 42 U.S.C § 2000e—5(f)(1), the Court exercises its discretion to stay this action for not more than sixty (60) days from the date of this order to allow sufficient time for Plaintiff to undertake the mandated efforts to obtain Defendant's voluntary compliance as to all of the locations of Defendant's restaurants and conduct alleged in the FAC. If Plaintiff is unable to obtain Defendant's voluntary compliance

//

//

//

//

//

//

//

within the sixty-day period, the stay will be lifted, the matter will proceed, and the parties are ordered to submit a proposed modified scheduling order that addresses any affected dates.

**IT IS SO ORDERED.**

DATED: November 14, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE